CULVER v. SOUTH HAVEN & EASTERN RAILROAD CO.[1]

1. APPEAL AND ERROR—DECISION ON REVIEW—FORMER REVIEW—LAW OF THE CASE.

The decision of the court on error is the law of the case for all subsequent reviews of the same case.

2. SAME—REVIEW—QUESTIONS CONSIDERED — EXCEPTIONS—NECESSITY.

Alleged error of the trial court in overruling a motion for new trial cannot be considered in the absence of exception to the ruling.

3. COSTS—APPEAL—PROLIX RECORD AND BRIEF.

Where the record and brief on error are unnecessarily long because of the attempt of plaintiff in error to raise questions decided upon a former review of the case, plaintiff in error will be permitted on reversal to tax as costs the expense of printing only such parts of the record and brief as the court deems necessary to raise the questions open for review.

ON REHEARING.

1. MASTER AND SERVANT—PERSONAL INJURIES—EVIDENCE —QUESTION FOR JURY.

In an action against a railroad company for injuries to a switch-

[1] Rehearing denied December 17, 1906.

man, evidence considered, and *held*, to present a question for the jury whether the place on the track where a witness made certain measurements was the place where plaintiff was injured.

2. SAME — EVIDENCE — ADMISSIBILITY — CONDITIONS AT PLACE OF INJURY.

Plaintiff claiming to have received his injury because of his having caught his shoe between a projecting fish-plate bolt and a spike in a tie, testimony of a witness as to measurements made from the spike hole after the accident, is not objectionable on the ground that the conditions were changed, as for the purposes of measurement they were the same.

Error to Van Buren; Carr, J. Submitted February 13, 1906. (Docket No. 120.) Decided May 24, 1906. Motion for rehearing granted July 24, 1906. Reargued October 4, 1906. (Docket No. 3.) Former opinion reversed October 29, 1906.

Case by William Culver against the South Haven & Eastern Railroad Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*W. J. Barnard* (*Edward Maher*, of counsel), for appellant.

*Thomas J. Cavanaugh* and *L. A. Tabor*, for appellee.

BLAIR, J. This case has been previously before this court, and is reported in 138 Mich. 443. Counsel for defendant then contended:

"(1) The verdict was against the overwhelming weight of the evidence.

"(2) That Culver was not in the exercise of ordinary care, being guilty of contributory negligence.

"(3) That the defendant did not receive a fair trial, owing to misconduct.

"(4) That the learned trial court erred in ruling upon evidence.

"(5) That the learned trial court erred in charging the jury."

In disposing of the case this court said:

"1 and 2 may be considered together. Was the verdict overwhelmingly against the weight of evidence? Can we say, as a matter of law, Culver was guilty of contributory negligence? Without going into details, we may say an examination of the record satisfies us the plaintiff presented a case making it the duty of the trial judge to submit it to a jury under proper instructions.

"3. This assignment of error relates to the conduct of plaintiff's counsel during the taking of testimony and while presenting the case to the jury. We have no hesitancy in saying that if the conduct of Mr. Tabor, about which complaint is made, was the only improper conduct of counsel, we should reverse the case, and direct a new trial. The misconduct, however, was not confined to counsel upon one side. We do not feel it our duty to attempt from this record of nearly 300 pages to decide who of the counsel was most to blame. We do say the conduct of Mr. Tabor on one side and Mr. Maher on the other, was such as ought not to be permitted in any court of record anywhere.   *   *   *

"4. Did the court err in the admission of evidence? As a rule, he did not, but in one instance we think an error was made, which may have made a difference with the final result.   *   *   *

"5. Did the trial judge err in his charge to the jury? He gave all of defendant's requests to charge which it was proper for him to give. With one exception, we think the remaining portion of his charge was a correct statement of the law."

Notwithstanding this final determination of the law of this case, counsel for defendant now raise precisely the same questions, with a few additional ones, upon a record of 772 pages, including 330 assignments of errors, and present their argument in a principal brief of 194 pages and a reply brief of 76 pages.

The error in the charge referred to in our previous opinion was corrected upon the present trial, and the only rulings of the court which are open to review upon this record are those relating to the admission of evidence and the conduct of counsel. We think the court erred in permitting the witness Johnson to testify to certain meas-

urements made from a spike hole long after the accident, without any showing that the condition of the track was the same as at the time of the accident.   As this testimony was directed towards one of the most important issues of fact in the case, we feel constrained to reverse the case because of its reception.

Notwithstanding what·was said upon the subject in the former opinion, counsel on both sides traveled outside the legitimate bounds of argument.   We trust that upon the next trial of this case the circuit judge will, if necessary, adopt strenuous means to compel counsel to keep within their proper field of argument.

We cannot consider the alleged errors of the court in overruling the motion for a new trial, for the reason that no exceptions were taken to such denial.   *Ginn* v. *Coal Co.*, 143 Mich. 84.   The great bulk of this record and of the briefs of appellant is unnecessary in consequence of the prior decision of this court, and for that reason we shall limit appellant's taxation of ˙costs for record and briefs to 100 pages of record and 30 pages of brief.

The judgment is reversed, and a new trial granted, with costs to appellant as above limited.

McALVAY, GRANT, MONTGOMERY, and MOORE, JJ., concurred.

### ON REHEARING.

BLAIR, J.   The judgment in this case was reversed upon the ground that the trial court erred in admitting testimony of measurements made by the witness Johnson long after the plaintiff's injury, in the absence of evidence that the conditions remained unchanged.   Upon plaintiff's application, a rehearing was granted, and the case reargued upon this single point.   As the record·stood at the time the ruling was made, we are still of the opinion that it was erroneous, but, after further consideration, we are satisfied that the error was ˙cured by testimony subsequently introduced.   The testimony introduced by plain-

144 MICH.—17.

tiff tended to show that he was injured by catching
his shoe between a projecting fish-plate bolt and a spike
in a tie, at a joint of two rails, opposite a gap in the
right of way fence east of a certain box factory. John-
son testified that he made his measurements "right oppo-
site" the break in the fence:

"*Q*. Where was it in relation to the point where Cul-
ver was injured?

"*A*. I couldn't tell exactly, not far from there.

"*Q*. Where was it in relation to a joint between the
rails?

"*A*. Right close to a joint."

Plaintiff's witness, Bundy, testified that he saw the bolt
and spike in question on the day of the injury: "I noticed
a break in the board fence at about that point, almost oppo-
site where I saw this. I noticed the box factory, and
this was about 75 feet east of the box factory. It was at
the third joint east of the box factory;" that the bolt was
next to the joint on the west side, and the spike was two
inches further north; that he went to this point the day
after the accident, and the bolt and spike were gone.
Defendant's witness, Ritter, testified:

"I commenced work for the S. H. & E. Co., August
13, 1902, and I pulled spikes out of the ties wherever we
found them, some of these old narrow gauge spikes. We
found them in surfacing, but not very often. From
August 18th, when I took charge of Boyer's section here,
up to and including this day of September, or until Boyer
returned in October, there was no change in the condition
of this track from Kalamazoo street west to the west end
of the box factory."

Defendant's section foreman, Boyer, who had charge of
the track where the injury occurred, testified that he was
away at the time of the accident and did not go over the
track again till October 18th.

"When I was down there working, I discovered a
break in the fence. There is a break and a vacant
space, and then it commences again. Why, I noticed
right about north of this break in the fence to the west

there must be a joint there somewheres.   I noticed after
I came back to work a spike hole right north of that joint;
that was one of the old ties that was left at the time the
track was spread and to spread the track, we removed the
row of spikes that was south of the rail, and shoved the
rail over.   *   *   *   I examined this particular tie to which
my attention has been called during the last trial and found
the same tie there that was there before the accident and
after the accident, and it had a spike hole in it when I last
saw it.   There was a spike hole in the track, yes, sir; but
that was after I came back.   *   *   *

   " Q.  You found the same tie there then that was there
before the accident and there after the accident, as you
saw it?

   "A.  Yes, sir.

   " Q.  And had it the spike hole in it when you last saw
it ?

   "A.  Yes, sir. ' *   *   *   I don't know that the spike
hole was there on the day of the accident, no, sir.   All I
know is I found a spike hole at the time that I last testi-
fied, and after the road was in the possession and control
of other people, yes, sir."

   Defendant's general manager and, later, superintendent,
testified :

   "I think I saw in the tie at the conjunction of two
rails, at about the point indicated on the map by the let-
ter ' A ' a spike hole about six inches north of the south
rail at that time."

   The letter A on the map was opposite the west end of
the gap, which extended easterly from that point some 60
feet.

   It is argued that as there were at least two rail joints
opposite the gap, and the testimony of Johnson did not
point out which of the joints, 30 feet apart, he measured
from, the testimony of the different witnesses is
not so definite as to the locality of the joint as to show
that they were testifying about the same joint that John-
son measured from.   This argument was given some
weight in our former consideration of the case, but, upon
further reflection, we have concluded that the testimony
presented a question of fact for the jury as to the identity

of the point where Johnson made his measurements with the point where plaintiff and his witnesses claimed his foot was caught by the bolt and spike. It cannot, of course, be claimed by plaintiff that no change was made after the injury, since it is undisputed that there was no such bolt and spike, as he claimed to have been caught by, at the point in question the day after the accident. But the removal of the spike would leave the spike hole, and, for the purposes of measurement, the conditions would be unchanged.

The judgment is affirmed.

McALVAY, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.